UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EMORY SMITH,

Plaintiff,

v.

KNIGHT PORT SERVICES LLC et al.,

Defendants.

Case No.: 2:25-cv-10797-MEMF-PD

**ORDER DENYING MOTION TO REMAND [DKT. NO. 15]**

Before the Court is Plaintiff's Motion to Remand. Dkt. No. 15 ("Motion"). For the reasons stated herein, the Court hereby DENIES the Motion.

/ / /

/ / /

/ / /

/ / /

/ / /

# I. Background

## A. Factual Allegations[1]

Plaintiff Emory Smith was an hourly-paid or non-exempt employee for Defendants from approximately January 2023 to July 2023. Dkt. No. 1-1 ("Compl.") ¶¶ 24-25. During his employment with Defendants, Defendants failed to compensate him and other class members for all hours worked and missed meal periods and/or rest breaks. *Id.* ¶ 26.

Due to certain policies, practices or procedures, Plaintiff and other class members suffered various California Labor Code ("Labor Code") and Business and Professions Code violations. *See generally id.* In particular, Defendants failed to pay the class for all of the hours they worked, including minimum wage and overtime wages; failed to provide the class uninterrupted meal and rest periods; failed to timely pay the class all final wages upon separation from employment; and failed to furnish accurate, itemized wage statements. *Id.*

## B. Procedural History

Plaintiff filed suit in Los Angeles County Superior Court on August 6, 2025. *See* Dkt. No. 1-1. Plaintiff brought ten claims under California law: (1) failure to pay overtime wages; (2) failure to provide uninterrupted meal periods; (3) failure to authorize and permit rest breaks; (4) failure to pay minimum wages; (5) failure to timely pay final wages; (6) failure to timely pay wages during employment; (7) failure to provide accurate itemized wages statements; (8) failure to keep requisite payroll records; (9) failure to reimburse business expenses; and (10) unfair business practices. *See generally* Compl. Plaintiff brings this action on behalf of other similarly situated hourly, non-exempt employees.

Defendants removed the action to this Court on November 10, 2025, under the jurisdiction of the Class Action Fairness Act ("CAFA"). *See* Dkt. No. 1 ("NOR").

Plaintiff filed the instant Motion on December 10, 2025. Dkt. No. 15 ("Motion"). Defendants filed their Opposition on December 24, 2025, to which was appended Declarations by Robin Rohwer, Matthew Sciascia, and Babak Yousefzadeh. Dkt. Nos. 16 ("Opposition"), 16-1 ("Rohwer

---

[1] The following factual background is derived from the allegations in Plaintiff's Complaint, Dkt. No. 1-1 ("Compl."), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

Decl."), 16-2 ("Sciascia Decl."), 16-3 ("Yousefzadeh Decl."). Plaintiff filed a Reply on December 31, 2025. Dkt. No. 17 ("Reply"). On January 5, 2026, Defendants filed a Notice of Errata. Dkt. No. 18. On January 14, 2026, Plaintiff filed an objection to Defendants' Notice of Errata. Dkt. No. 19.

On March 12, 2026, the Court held a hearing on the Motion.

## I. Applicable Law

### A. Class Action Fairness Act

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Removal of a state action to federal court is appropriate only if the district court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). Under CAFA, federal courts have original jurisdiction over civil class actions in which (1) the aggregate number of members in the proposed class is 100 or more; (2) the amount in controversy exceeds the sum or value of $5,000,000; and (3) the parties are minimally diverse. 28 U.S.C. §§ 1332(d)(2), (5)(b).

When a plaintiff files an action in state court over which federal courts might have jurisdiction, the defendant may remove the action to federal court. *See* 28 U.S.C. § 1446. When the defendant does so pursuant to CAFA, the defendant must make a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). If the plaintiff contests whether the amount in controversy is sufficient for jurisdiction, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

The defendant who removed the case bears the burden "to show the amount in controversy by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022). There is "no antiremoval presumption" in cases invoking CAFA jurisdiction. *Dart Cherokee*, 574 U.S. at 89. In other words, while a defendant bears the burden of showing removal is proper, there is no "thumb on the scale against removal." *Jauregui*, 28 F.4th at 994.

Rather, the procedure is that "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197

(9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation marks omitted)). In determining the amount in controversy, the defendant may rely on "a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.* However, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. Thus, when the calculations cannot be justified by the allegations in the complaint—or are "unreasonable" assumptions—the removing party must present evidence to support the assumptions made. *Perez v. Rose Hills Co.*, 131 F.4th 804, 809 (9th Cir. 2025). Put another way, the district court must first consider whether any assumptions made by the defendant are a reasonable interpretation of the complaint, and my not reject assumptions on the basis that they are not supported by evidence. *Perez*, 131 F.4th at 809.

It is well-settled in the Ninth Circuit that CAFA's provisions should be interpreted broadly with a "strong preference" for class actions to be heard in federal court *when properly removed*. *Jauregui*, 28 F.4th at 993. And in the early stages of litigation, a defendant has no choice but to rely on assumptions when calculating an amount in controversy using the plaintiff's complaint before resolving any disputes over key facts. *Id.* As a result, it is inappropriate to demand exact certainty from a defendant in their calculations of the amount in controversy. *Id.* However, "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Id.* at 996.

On the other hand, where "a defendant's assumption is rejected because a different, better assumption is identified . . . the district court should consider the claim under the better assumption—not just zero-out the claim." *Id.* In such circumstances, the Court should identify, applying a preponderance of the evidence standard, the best possible assumptions, and use them to calculate the total amount in controversy. *See id.* If the total amount is found to be greater than $5 million, the action will remain in federal court. *See* 28 U.S.C. § 1332(d)(2). If not, it should be remanded to state court. *See id.*

## II. Discussion

The parties do not dispute that the aggregate number of class members is 100 or more, or that the parties are minimally diverse. 28 U.S.C. §§ 1332(d)(2), (5)(b); *see generally* Motion; Opposition; Reply. Thus, the prevailing issue is whether the amount in controversy ("AIC") is satisfied under CAFA.

### A. Class Action Fairness Act Jurisdiction Exists.

Plaintiff argues that Defendants cannot prove, by a preponderance of the evidence, that Defendants' proffered evidence establishes the AIC required under CAFA. Motion at 5-7. Defendants contend that their estimations, reasonably based on the allegations set forth in Plaintiff's Complaint, *see* Compl., as well as the supporting Supplemental Declaration from Drew Millar, satisfy the AIC under CAFA. Opposition at 4-7. For the reasons stated below, the Court determines that Defendants have met the AIC threshold required by CAFA.

Plaintiff bases his argument on the following basis: (1) the Complaint does not assert a specific amount, (2) Defendants have failed to present any documentary evidence substantiating their AIC calculations; and (3) Defendants' assumptions are unreasonable. Motion at 7. Specifically, Plaintiff alludes to how Defendants' calculations are founded on "unsupported assumptions" regarding frequency of violations. *Id.* Through the alleged baseless assumptions, Plaintiff posits that Defendants are inflating the damages sought under each claim. *Id.*

In response, Defendants assert the following: (1) they are not required to produce documentary evidence at this pleading stage; and (2) their AIC calculations are reasonably based on the allegations set forth in the Complaint. Opposition at 4-5.

The Court will address the disputed calculations under each asserted claim.

#### i. Defendants Are Not Required to Produce Documentary Evidence.

Plaintiff argues that Defendants failed to "provide competent evidence supporting" the number of: (1) putative non-exempt drivers; (2) drivers whose employment ended during the three years and thirty days preceding the filing of the complaint; (3) workweeks; and (4) the average hourly rates used in their calculations. Motion at 6-8. Defendants disagree, claiming that the AIC is

properly based on the Complaint's allegations and supporting declarations of Robin Rohwer and Matthew Sciascia. Opposition at 6-7.

Per the Ninth Circuit, the removing party has the burden to prove, by a preponderance of the evidence, that CAFA jurisdiction exists—and may do so through "summary-judgment-type" evidence. *Jauregui*, 28 F.4th at 994; *Ibarra*, 775 F.3d at 1197. Further, a removing party can base its AIC calculations on the allegations of the operative Complaint so long as its assumptions are reasonable. *Perez*, 131 F.4th at 809.

Here, Defendants, in the Notice of Removal, indicated that their assumptions regarding the total amount of drivers, workweeks, and rates were based on the Complaint allegations and "business records maintained by both Knight Port Services and Knight Transportation." NOR ¶¶ 39-41. From those records, Defendants concluded that: (1) the "putative class is comprised of at least 2,000 drivers," with 1,500 drivers' employment ending "during the three years and thirty days preceding the filing of Plaintiff's Complaint;" (2) the total workweeks, accounting for non-workweek reductions, is "at least 70,000," and the California minimum hourly wage rate between 2021 and 2025 "increased from $14.00 per hour to $16.50 per hour." *Id.* ¶¶ 39-43. These assumptions are supported by Declarations of Robin Rohwer, who manages payroll practices for Defendants, and Matthew Sciascia, who oversees safety compliance which involves compliance with Federal hours of service regulations for Defendants. *See* Rohwer Decl. ¶¶ 3-9; Sciascia Decl. ¶¶ 2, 5-7. Contrary to Plaintiff's contention, Motion at 6-8, Defendants are not required to produce their business records. *Jauregui*, 28 F.4th at 994; *Ibarra*, 775 F.3d at 1197. Defendants' obligation was to submit reasonable assumptions based on allegations set forth in the Complaint and supported by summary judgment type evidence such as Declarations. *Id.* By reviewing their business records and filing supporting Declarations, the Court finds that Defendants' Notice of Removal is supported by competent evidence.

ii. <u>Defendants' Proffered Amount in Controversy is Reasonable.</u>

Because Defendants seek removal, they have the burden to establish the requisite AIC by a preponderance of the evidence. *Jauregui*, 28 F.4th at, 99; *Dart Cherokee*, 574 U.S. at 89. As mentioned above, Plaintiff contends that Defendants' proffered AIC calculations are based on

conclusory and unsupported assumptions. Motion at 6-8. As discussed below, the Court finds that the relevant assertions in the Notice of Removal and Declarations of Rohwer and Sciascia are not conclusory, and the assumptions made are properly grounded in the language of the complaint and reasonable.

*1. Plaintiff's Minimum Wage Claim*

The parties dispute Defendants' calculation of minimum wage damages.

The Defendants originally removed this action based upon a set of assumptions that they asserted were reasonable and derived from their review of business records and the language of the Complaint. NOR ¶¶ 42, 45. In particular, they assumed that, based on a preliminary review of the records, the putative class involved non-exempt employees who worked approximately 70,000 workweeks and were subject a two hour per workweek violation rate. *Id.* ¶¶ 46, 48. In their Opposition, Defendants revised their calculations based on Sciascia's Declaration where Sciascia stated that class members "worked at least five hours of on-duty not driving time per week." Sciascia Decl. ¶ 5; Opposition at 10. Accounting for California's $14 minimum wage and Plaintiff's allegation that Defendants knew that class members were entitled to wages but engaged in a policy and pattern of wage abuse, they reached an AIC calculation of $7,787,500 for minimum wage damages and $7,787,500 for liquidated damages.[2] *Id.* ¶¶ 42, 47-49.

In his Motion, Plaintiff asserts that these assumptions are unreasonable because Defendants assume a two hour per workweek violation rate which is unjustified by the record as the Complaint does not allege any specific amount of unpaid work. Motion at 8-9, 14-15. In response, the

---

[2] Defendants arrived at $7,787,500 by adding the total minimum wage damages accrued and the total minimum wage damages that will occur through the date of trial. Opposition at 11-12. First, they accounted for the accrued damages, multiplying a $14.00 hourly rate by 5 hours of unpaid time per workweek by 70,000 workweeks—totaling $4,900,000. *Id.* Then, they calculated damages through trial, multiplying $16.50 hourly rate by 5 hours of unpaid time per workweek by 35,000 workweeks—totaling $ 2,887,500. *Id.*

The Ninth Circuit has held that the AIC is "not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018). Plaintiff cites to *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785 (9th Cir. 2018), arguing that it does not permit future calculations. Reply at 4-5, 16-17. *Fritsch* does not hold that future calculations are impermissible. *Id.* Rather, *Fritsch* discussed attorneys' fees recovery. *Id.* at 794-95. Thus, the Court finds *Chavez* is controlling. Therefore, the Court considers Defendants' future damage AIC calculations. The Court also notes that the 35,000 workweeks total is reasonable given that trial has yet to be set, and the total workweeks is calculated for the past four years.

Defendants provide the Rohwer and Sciascia Declarations—and point to the language in the operative complaint regarding Defendants "fail[ure] to compensate Plaintiff and the other class members in Subclass A for *all* rest periods and nonproductive time separate from any piecerate compensation." Compl. ¶ 37 (emphasis added); Opposition at 9-10; Rohwer Decl. ¶¶ 5-9; Sciascia Decl. ¶¶ 4-6. Plaintiff responds that "pattern and practice" does not reasonably result in a presumed 100% violation rate and reiterates that Defendants' provided Declarations fail to "explain[] how [Defendants] derived either figure." Reply at 7-11.

The Court finds that the Defendants' calculations are based on reasonable estimates and assumptions that are appropriately tethered to the allegations set forth in the Complaint. Although it may be true that "pattern and practice" would not support a 100% violation rate, here, the language of the Complaint is not merely of a "pattern and practice." Compl. ¶ 32. Rather, in the Complaint, Plaintiff asserts that Defendants failed to compensate "Plaintiff and the other class members in Subclass A for *all* rest periods and nonproductive time separate from any piecerate compensation." Compl. ¶ 37 (emphasis added). Plaintiff also alleges that "class members were required to work more than eight (8) hours per day and/or forty (40) hours per week." *Id.* ¶ 45. This language certainly supports an assumption of an average of two hours per workweek. At the March 12, 2026 hearing, the parties disputed whether "piecerate compensation" is inclusive of nonproductive time. However, Plaintiff's counsel acknowledged, and the Court does not find, an allegation in the Complaint stating that piecerate compensation includes nonproductive time. As such, Defendants' assertion that piecerate compensation does not include any nonproductive time is a reasonable interpretation of the Complaint and Plaintiff's contention that Defendants failed to identify competent evidence showing a five hour per workweek violation[3] is unavailing. Reply at 9-10. As the Ninth Circuit made clear in *Perez*, the fact that there may be other equally valid assumptions from this language does not make the Defendants' assumptions unreasonable. *Perez*, 131 F.4th at 809. In sum, the Court finds that the Defendants' violation rate is a reasonable interpretation of the complaint.

---

[3] The Court notes that Defendants assert a five hour per workweek violation in their Opposition whereas the Notice of Removal alleged a two hour per workweek. Reply at 8-10; *see* Opposition at 8-10; NOR ¶¶ 42, 47-49.

Further, as Defendants' calculation is based on the California's minimum wage rates throughout the past four years, the Court finds Defendants' totals of $7,787,500 for unpaid minimum wage and $7,787,500 for liquidated damages under Section 1194.2[4] reasonable. Opposition at 10-12.

*2. Plaintiff's Meal and Rest Period Claim*

The parties dispute Defendants' calculated damages related to meal and rest periods.

In their Notice of Removal, the Defendants assumed, from their review of business records and allegations set forth in the original Complaint, that Defendants failed to provide a meal and rest period at least four times per workweek. NOR ¶ 54. Accounting for California's minimum wage throughout the past four years and Plaintiff's allegation that Defendants required class members to "work through their meal and rest periods" without compensation, they reached an AIC calculation of $6,230,000.[5] *Id.* ¶¶ 56-57. In their Opposition, Defendants have reduced the violation rate to two times per workweek, resulting in a renewed total of $3,115,000. Opposition at 14-16.

Plaintiff asserts that these assumptions are unreasonable because Defendants assume a four times per workweek violation rate which is unjustified by the record as the Complaint does not allege any specific amount of unpaid work and Defendants do not provide any documentation to support their assumptions. Motion at 11-12. In response, the Defendants point to allegations in the operative complaint regarding the alleged "pattern and practice" to not provide meal periods or authorize rest periods. Compl. ¶ 32; Opposition at 15. Defendants also cite to Rohwer's Declaration, which discusses how class members worked more than five hours a day and thus, are entitled to meal and rest periods. Rohwer Decl. ¶ 9. Plaintiff's Reply reiterates that Defendants have failed to provide competent evidence supporting their calculations. Reply 15-16.

The Court finds that the Defendants' calculations are reasonable based upon the allegations set forth in Plaintiff's Complaint and supported by Ninth Circuit precedent. In *Perez*, the court found that defendant reasonably assumed a weekly violation based on plaintiff's allegation that defendant "committed violations 'at times.'" *Perez*, 131 F.4th at 806-10. The *Perez* court reiterated the *Ibarra*

[4] Labor Code Section 1194.2 allows a plaintiff to recover liquidated damages (double damages) for Defendants' failure to pay minimum wages.

[5] Defendants, as with their minimum wage calculations, addressed the total damages under two categories: damages accrued and damages to be incurred throughout trial. NOR ¶¶ 56-57. As discussed above, the Court concludes that this AIC calculation methodology is supported by binding authority. *Chavez*, 888 F.3d at 414-15.

standard: a defendant can base the AIC on reasonable assumptions from allegations of the complaint. *Id.*; *Ibarra*, 775 F.3d at 1197. In the Complaint, Plaintiff alleges that it was a "pattern and practice" for Defendants to not provide meal and rest periods. Compl. ¶ 32. The Complaint specifically states that class members "were required to work for more than five (5) hours without a meal and rest period, and Defendants "failed to provide" "all required rest and meal periods during the relevant time period." *Id.* ¶¶ 34, 46, 70. Thus, Defendants' weekly violation assumption is in accord with binding precedent and the assumed wages are reasonable. *Perez*, 131 F.4th at 809.

The Court therefore adopts Defendants' meal and rest period calculations. The Court concludes that the AIC determination under the meal and rest period claim is $3,115,000 (($14.00 hourly rate × 2 penalties per workweek x 70,000 workweeks) + ($16.50 hourly rate × 2 penalties per week × 35,000 workweeks)).[6]

*3. Plaintiff's Overtime Claim*

The parties dispute Defendants' calculated overtime damages.

In their Notice of Removal, the Defendants assumed, from their review of business records and Plaintiff's allegations, that Defendants failed to pay overtime wages to all class members at least one hour per workweek. NOR ¶¶ 50-52. Accounting for 70,000 workweeks, California's minimum wage rates throughout the past four years, and a 0.5 overtime premium under California Labor Code section 510, they reached an AIC calculation of $778,750. NOR ¶¶ 52-53.

Plaintiff contends that there is no support for the one hour per week assumption and Defendants fail to explain the nature or basis which triggered class members' overtime pay period. Motion at 10-11. Defendants describe how the Complaint explicitly states that class members were uncompensated for required overtime hours. Opposition at 12-14. Plaintiff responds that "pattern and practice" does not reasonably result in a presumed 100% violation rate. Reply at 14-15.

Here, given that the Complaint alleges that "class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation for all

[6] Defendants, as with their minimum wage calculations, addressed the total damages under two categories: damages accrued and damages to be incurred throughout trial. NOR ¶¶ 52-53. As discussed above, the Court concludes that this AIC calculation methodology is supported by binding authority. *Chavez*, 888 F.3d at 414-15.

overtime hours worked," it is reasonable for Defendants to presume each class member was subject to at least one unpaid overtime hour per workweek. *Perez*, 131 F.4th at 809; Opposition at 14.

As such, the Court finds that the AIC determination under the Overtime claim is $778,750 ((70,000 workweeks × 1 hour per week × $14.00 hourly rate × 0.5 overtime premium) + ($16.50 hourly rate × 1 hour per week × 35,000 workweeks × 0.5 overtime premium)).

*4. Plaintiff's Waiting Time Penalty Claim*

The parties dispute Defendants' calculated waiting time penalty damages.

In their Notice of Removal, the Defendants assumed, from their review of business records and allegations set forth in the Complaint, that at least 1,500 of the 2,000 member putative class suffered waiting time penalty damages.[7] NOR ¶ 60. Accounting for 1,500 former employees, California's minimum wage rate, and Plaintiff's allegation that Defendants "intentionally and willfully failed to pay" class members within seventy-two hours of the conclusion of their employment with Defendants, Compl. ¶ 95; NOR ¶ 59, Defendants reached an AIC calculation of $ 5,400,000. NOR ¶ 62.

Plaintiff argues Defendants presume every employee is entitled to waiting time penalties without any supportive data. Motion at 15-17. In Opposition, Defendants explain that given the numerosity of alleged violations, it is reasonable to assume that every non-exempt employee could be entitled to a waiting time penalty claim under California Labor Code section 203. Opposition at 18. Plaintiff's Reply reiterates that Defendants' calculation rests on stacked assumptions and an incomplete evidentiary showing. Reply at 12-13.

Section 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an

---

[7] At the March 12, 2026 hearing, Plaintiff argued that there is no evidence supporting the assumption that 1,500 employees are subject to the waiting time penalty claim. In particular, Plaintiff directed the Court to *Karnette Lindsey v. Knight Transportation, Inc. et al*, No. 5:25-cv-00328-MEMF-SP, Dkt. No. 18-2 ¶ 5, a case involving similar parties and issues, emphasizing that the defendant there alleged that only 500 employees were subject to the waiting time penalty claim. Through *Lindsey*, Plaintiff claims that Defendants' 1,500 computation is unreasonable. In response to Plaintiff's argument, the Court asked and offered Plaintiff to submit supplemental briefing regarding Plaintiff's contention but Plaintiff declined. The Court understands Plaintiff's concerns regarding the disparity between the amount of employees in *Lindsey* and this action. However, a change in employee numbers is not a basis to discount Rohwer's sworn declaration, especially where Plaintiff has not produced evidence contradicting Rohwer's declaration. As such, the Court finds that 1,500 employees is a facially plausible amount.

> employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203. Because Plaintiff asserts a variety and frequency of Labor Code violations against Defendants, and importantly, have not alleged that any class members have been paid the at issue wages, *see generally* Compl., Defendants reasonably based their calculation under the assumption that each class member may be entitled to Section 203 penalties. *Perez*, 131 F.4th at 809. And their calculations are substantiated by Rohwer's Declaration, indicating that putative class members worked at least eight hours per day and the timeline regarding the members' employment termination. Rohwer Decl. ¶¶ 8-10. It is reasonable to assume that Defendants haven't paid any putative class members, especially given that the Consolidated Complaint does not allege any payment made. *Perez*, 131 F.4th at 809; *Ibarra*, 775 F.3d at 1197; *see also* Compl. Thus, the Court finds that the AIC determination under the Section 203 claim is $5,040,000 (1,500 former employees × $112 per day [8 hours per day × $14.00 hourly rate] × 30 days).

*5. Plaintiff's Wage Statement Penalties*

The parties dispute damages pertaining to Defendants' alleged failure to provide accurate itemized wage statements.

In their Notice of Removal, the Defendants assumed, from their review of business records and allegations set forth in the Complaint, that Defendants failed to provide wage statements throughout the statutory period. NOR ¶¶ 63-66. Accounting for these assumptions, they reached an AIC calculation of $960,000 for wage statement penalties damages. Opposition at 19-20.

Plaintiff asserts that it is unreasonable for Defendants to presume each class member is entitled to wage statement penalties under Section 226(a). Motion at 17. Defendants counter, stating that Plaintiff alleged that Defendants knew "class members were entitled to receive" wage statements but never provided statements to class members. NOR ¶¶ 63-65; Opposition at 19-20. Plaintiff's Reply reiterates that Defendants' "calculation rests on stacked assumptions and an incomplete evidentiary showing." Reply at 11-12.

The liability under Section 226(a) is expressed under subsection (e)(1):

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual

> damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Lab. Code § 226(e)(1).

The Complaint alleges that Defendants "intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements." Compl. ¶ 107. In particular, Plaintiff states that wage statement deficiencies included "the failure to include the total number of hours worked by Plaintiff and the other class members." *Id.* At no time does Plaintiff indicate Defendants proffered compliant wage statements. *See generally* Compl. Thus, it is reasonable for Defendants to assume a 100% violation rate. *Perez*, 131 F.4th at 809; *Ibarra*, 775 F.3d at 1197. Therefore, the Court finds that the AIC determination for non-compliant wage statements is $960,000 ([800 putative class members × $50] + [[10,000 wage statements - 800 putative class members] × $100]).

*6. Attorneys' Fees*

The parties dispute Defendants' alleged attorneys' fees calculations.

In their Notice of Removal, the Defendants considered, from the allegations set forth in the Complaint and the Ninth Circuit 25% benchmark, and valued Plaintiff's attorneys' fees at $4,659,687.50. NOR ¶ 68.

The Ninth Circuit provides that when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922 (emphasis added); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.").

Plaintiff asserts that the Defendants failed to provide a lodestar calculation or specify which causes of action give rise to attorneys' fees. Motion at 18-19. In response, Defendants argue that Plaintiff explicitly requests attorneys' fees and point to Ninth Circuit decisions upholding the 25% benchmark. Opposition at 20-22. Plaintiff's Reply further claims that Defendants' estimated attorneys' fees damages are "speculative and not supported by competent evidence." Reply at 13-14.

The parties do not contest that Plaintiff's counsel may be entitled to attorneys' fees if Plaintiff prevails in this wage and hour class action. Motion at 18-19; Opposition at 20-22. Because Plaintiff seeks attorneys' fees for Labor Code violations, attorneys' fees should be included in AIC calculations. *See* Compl. ¶¶ 64, 90, 128.

Although the Court is not bound to the 25% benchmark, it finds that 25% meets the reasonableness standard for AIC calculations. There is no indication that Plaintiff's counsel seeks less than 25% in attorneys' fees. And *Winterrowd v. Am. Gen. Annuity, Ins. Co.*, 556 F.3d 815, 826-27 (9th Cir. 2009) does not support Plaintiff's proposition that "any calculation of attorneys' fees must also be based on the lodestar method." Motion at 18. The *Winterrowd* court determined that attorneys should present evidence of work performed and the reasonableness of the rates requested. *Winterrowd*, 556 F.3d at 826-27. Here, Defendants provided the Declaration of Babak Yousefzadeh, which detailed reasonable hourly rates and time spent on civil matters that proceed to trial. Yousefzadeh Decl. ¶¶ 2-3. As such, the Court finds that Defendants' attorneys' fees calculations are reasonable. The Court will include the lesser 25% benchmark rate of $4,000,000 in its final calculation. Opposition at 22.

The Court finds the total AIC is $29,468,750 based on the below subtotals of each claim:

1. Minimum Wage: $15,575,000
2. Meal and Rest Period: $3,115,000
3. Overtime Wage: $778,750
4. Waiting Time Penalties: $5,040,000
5. Wage Statements: $960,000
6. Attorneys' Fees: $4,000,000

Accordingly, the Court finds that Defendants have met their burden to establish the requirements under CAFA for federal jurisdiction.

/ / /

/ / /

/ / /

/ / /

## III. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion and retains jurisdiction in this matter.

IT IS SO ORDERED.

Dated: September 28, 2026

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge